UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEYSEL DANEL AGUILERA GOMEZ,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX, *et al.*,<br><br>Respondents. | Case No.   1:26-cv-04005 (EJD)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. Nos. 1, 3 |

This habeas action concerns the detention of Petitioner Jeysel Danel Aguilera Gomez, a noncitizen who has lived in the United States for nearly three years. Based on the Government's new interpretation of 8 U.S.C. § 1225(b) as mandating detention for all noncitizens present in the United States without admission, Petitioner was re-detained without any finding of changed circumstances demonstrating that he was a flight risk or danger to the community. This matter is before the Court on Petitioner's writ of habeas corpus and motion for temporary restraining order. *See* Dkt. Nos. 1, 3. For the reasons explained below, the Court GRANTS Petitioner's writ of habeas corpus, and resolves the motion for temporary restraining order as moot.[1]

I.      BACKGROUND

Petitioner is a citizen of Honduras who entered the United States as a minor near Rio Grande Valley, Texas on or around July 26, 2023. Dkt. No. 9-1 at 3. Petitioner was subsequently arrested by a border patrol agent and transported to the Rio Grande Valley Sector Centralized Processing center for further processing by the Department of Homeland Security ("DHS"). *Id*. At

---

[1] In setting a briefing schedule on the petition for writ of habeas corpus and motion, the court informed the parties that it intended to rule on both the petition and motion together. Neither party objected. *See* Dkt. No. 9 ("Respondents do not oppose the Court ruling directly on the petition."). Case No.: 1:26-cv-04005-EJD

1

the Center, Petitioner was "processed for a Warrant of Arrest/Notice to Appear as per section 212(a)(6)(A)(i) of the Immigration and Nationality Act." *Id*. at 4. He was also served with Forms I-200, I-862, and I-286, and then released from custody into the United States. [2] *Id*. Following his release, Petitioner applied for asylum and began work. Dkt. No. 1 ¶ 18, 23. Further, based on the records submitted by Respondents, it appears Petitioner has kept a clean criminal record. *See* Dkt. 9-1 at 9 (noting that Petitioner has "[n]o criminal history").

Neither Respondents nor Petitioner provided the Court with the forms I-200, I-862, and I-286 Petitioner was served during his July 26, 2023 detainment and release. Most relevant here, however, is the Form I-286, also referred to as a "Notice of Custody Determination." *See* 8 C.F.R. § 236.1 (g) ("At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, an immigration official may issue a Form I-286, Notice of Custody Determination."). Both parties have indicated that the custody determination resulted in release, however, records submitted by Respondents don't specify whether Petitioner was released on bond or his own recognizance. S*ee* Dkt. No. 9 at 1 ("Petitioner entered the United States illegally in July 2023, was detained and released."). Regardless, in order to release Petitioner, DHS would necessarily have determined that Petitioner did not "pose a danger to property or persons, and that the [he was] [] likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

Despite no apparent change in circumstances since Petitioner's initial release, he was re-detained on February 26, 2026 while on his way to work. Dkt. No. 1 ¶ 23. Petitioner was served with a second Notice to Appear at the time of his re-detention, again charging him with inadmissibility per section 212(a)(6)(A)(i). Dkt. 9-1 at 12. An Immigration Court hearing was set for April 23, 2026. *Id*. Neither party has indicated whether a hearing has actually occurred, and the Immigration Court's docket indicates that a hearing is currently scheduled for June 24, 2026. *See* https://acis.eoir.justice.gov/en/caseInformation.

---

[2] Though Petitioner was a minor at the time, records submitted by Respondents do no suggests that he was processed as an unaccompanied minor under the Trafficking Victims Protection Reauthorization Act and its implementing regulations.

Case No.: 1:26-cv-04005-EJD

United States District Court
Eastern District of California

## II.    DISCUSSION

Petitioner filed this habeas petition and a motion for temporary restraining order on May 26, 2026, arguing that his prolonged detention without a finding that he is a flight risk or danger to the community violates due process. *See* Dkt. No. 1 ¶¶ 46–49. While acknowledging that "the majority of the judges in the Eastern District of California have rejected" this argument, Respondents contend that "Petitioner is an 'applicant for admission' who is subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)." Dkt. No. 9 at 1–2.

Respondents' argument has been widely rejected across this circuit, and indeed, throughout the United States. "[F]or the reasons set forth in numerous district court decisions in the past few months, § 1225(b)(2) does not apply to persons like Petitioner who were previously taken into custody and then released (such as under parole or supervised release)." *Bautista Villanueva v. Bondi*, No. 25-CV-4152-ABA, 2026 WL 100595, at *1 (D. Md. Jan. 14, 2026) (collecting cases); *see also Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *7 (N.D. Cal. Sept. 12, 2025); *Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2025 WL 2677125, at *4 (N.D. Cal. Sept. 18, 2025). Given Respondents' failure to articulate a lawful basis for Petitioner's detention, the Court next turns to his due process claim.

Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

Though neither party has specified exactly what Petitioner's custody status was between the time of his release on July 26, 2023 to the date of his detention on November 23, 2025, both parties have indicated that he was *released* by ICE. *See* Dkt. 9 at 1 (noting Petitioner was "detained and released"). Given that Petitioner was released into the interior of the United States—and the fact that Respondents have only argued that 8 U.S.C. § 1225(b) controls his

Case No.: 1:26-cv-04005-EJD

United States District Court
Eastern District of California

detention—the court need not determine precisely what statute applies here because Petitioner has a protected liberty interest in his continued freedom. *See Enriquez Escarcega v. Warden of the Golden State Annex Facility*, No. 1:26-CV-01012 DAD SCR, 2026 WL 480500, at *2 (E.D. Cal. Feb. 20, 2026) (noting that the court "need not determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in his continued release regardless of the applicable detention scheme"); *Cajina v. Wofford*, No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025) (same). "[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-CV-6695 AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey*, 408 U.S. at 482).

Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context where a noncitizen possesses a protected liberty interest in his continued release. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings for nearly three years. In the intervening years he has developed ties in his community working and supporting his family. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing."

Case No.: 1:26-cv-04005-EJD

United States District Court
Eastern District of California

*A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at \*5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Padilla v. U.S. Immigr. & Customs Env't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). The record before the Court indicates that there was no independent finding of changed circumstances by a neutral arbiter before Petitioner was re-detained. And Respondents have not argued that Petitioner is dangerous or would be a flight risk. As there have been no procedural safeguards to determine if Petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at \*5.

The final *Mathews* factor also weighs in Petitioner's favor. Although the Government has a strong interest in enforcing the immigration laws, its' interest in detaining Petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 787 F. Supp. 3d at 1094. "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so," but it must provide Petitioner with a hearing first. *Ortega*, 415 F. Supp. 3d at 970.

In light of the fact that Respondents failed to make any showing of changed circumstances before re-detaining Petitioner, he is entitled to release.

## III.   CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED.  IT IS HEREBY ORDERED that:

1.     Respondents immediately release Petitioner Jeysel Danel Aguilera Gomez from their custody.

2.     Respondents shall not impose any additional restrictions on Petitioner, unless they are determined to be necessary at a future pre-deprivation and/or custody hearing.

3.     If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter

Case No.: 1:26-cv-04005-EJD

United States District Court
Eastern District of California

at which Petitioner's eligibility for bond must be considered. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

4.    The Clerk of the Court is directed to close this case and enter judgment for Petitioner.

**IT IS SO ORDERED.**

Dated: June 23, 2026

EDWARD J. DAVILA
United States District Judge

United States District Court
Eastern District of California

Case No.: 1:26-cv-04005-EJD

6